PAKISTAN INTERNATIONAL AIR-
LINES CORPORATION, Plaintiff,

v.

McDONNELL DOUGLAS
CORPORATION,
Defendant.

Civ. A. No. 79-2548.

United States District Court,
District of Columbia.

Feb. 9, 1982.

Frank J. Costello, Charles J. Simpson, Jr., Zuckert, Scoutt & Rasenberger, Washington, D. C., for plaintiff.

Veryl L. Riddle, Daniel R. O'Neill, St. Louis, Mo., Bryan, Cave, McPheeters, & McRoberts, Washington, D. C., for defendant.

## MEMORANDUM OPINION and ORDER

ARTHUR L. BURNETT, United States Magistrate.

The Magistrate has carefully considered plaintiff's motion for disclosure and production of certain grand jury transcripts, and the accompanying statement of points and authorities, filed November 10, 1981. The memorandum of points and authorities in opposition filed by the defendant on December 7, 1981 and plaintiff's reply memorandum filed December 17, 1981, the representations of counsel at the hearing on January 15, 1982, and the post-hearing statement of plaintiff filed January 26, 1982 and defendant's reply of January 29, 1982 have been again reviewed and fully considered. Finally, the Magistrate has considered the representations of counsel expressed at the hearing of February 8, 1982.

■ In the Magistrate's view the release of grand jury transcripts in a civil case, even when there is a substantial relationship between the civil case and the criminal case which resulted, in part, from grand jury testimony set forth in the transcripts requested, and even where that particular grand jury has since dissolved, still requires the requesting party, in this case the plaintiff, to make a showing of particularized need for the disclosure which exceeds the need for continued secrecy. Such a showing of particularized need must be predicated upon more than conjecture or speculation. To paraphrase Mr. Justice Powell in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), the plaintiff in this case must show that the grand jury transcripts it seeks is needed to avoid a possible injustice in pursuing its claims in this civil case, that its need for disclosure, at this time, is greater than the need for continued secrecy, and that its request is so structured as to only cover such portions of grand jury testimony as is actually needed.[1]

■ The fact that the grand jury has been dissolved and that the requested grand jury testimony has already been disclosed to the defendant under Rule 16(a)(1)(A), Federal Rules of Criminal Procedure, does not eliminate the need for a showing of "particularized need" for disclosure to a plaintiff in a separate civil proceeding. See, *e.g., State of Texas v. United States Steel Corp.,* 546 F.2d 626, 631 (5th Cir. 1977); *In re Grand Jury,* 469 F.Supp. 666, 670 n. 6 (M.D. Pa.1978).[2] Especially is this so where the

---

1. A general representation that PIA requires the grand jury transcripts of the potential deponents' grand jury testimony for purposes of impeachment, refreshing recollections and testing credibility, fails to suffice. Were this the test, a plaintiff in every civil case, where there has been a related criminal prosecution, could proffer this reason and obtain the grand jury testimony. If such a proffered representation sufficed, it would almost amount to allowing general discovery in a civil case as distinguished from satisfying the compelling need requirement. *Cf. Baker v. United States Steel Corporation,* 492 F.2d 1074, 1079 (2d Cir. 1974). See discussion in *In re Corrugated Container Antitrust Litigation,* 1981–2 Trade Cases, (CCH) ¶ 64,287, at p. 74,299 (S.D.Tex.1981).

2. A willingness to accept protective order restrictions is no substitute for failure to establish a "particularized need," even where, as alleged by PIA, there may be a diminished need for continued grand jury secrecy.

disclosure in the criminal case has been very limited, that is to the McDonnell Douglas Corporation's General Counsel and to the individual executive officers who were defendants in the criminal prosecution and their counsel, and the contents have not otherwise been publicized throughout the corporate community or to the public at large. As recognized by the court in *United States v. Atlantic Container Line, Ltd.*, 511 F.Supp. 115 (D.D.C.1981), release or disclosure to such a broader group or to the public, in general, could cause strain in and adversity to the careers of those individuals whose testimony is disclosed.[3] Further, disclosure would have a chilling effect on future grand jury testimony of employees of corporations or other institutions which may be the subject of future grand jury investigations.[4] Normally, these individuals now are justified in relying on grand jury secrecy and may be frank and candid in their testimony before grand juries; but if the courts commenced granting motions for disclosure whenever there is some overlap between a civil and a criminal case, and

where a grand jury has since dissolved, such individuals, in the future may be much more inhibited than they have been in the past. Fear of future retribution and social stigma may act as powerful deterrents to those who come forward and now aid grand juries in the performance of their duties.

■ Further, in *Douglas Oil Co. v. Petrol Stops Northwest, supra,* Justice Powell spoke of the need that the request be structured to cover only the material actually needed. Here, PIA has made a request for disclosure and production of the grand jury testimony of fifteen (15) individuals, including one, Mr. James S. McDonnell, who is now deceased, and a second individual who did not even testify before the grand jury, Mr. William G. Dickman, who is now also deceased.[5] Thus, this is more in the nature of a generalized request rather than an individualized showing contemplated by the concept of "particularized need." As Justice Powell suggested in citing *Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 486 (E.D.Pa.1962) and in discussing it at

3. The affidavit of counsel for McDonnell Douglas Corp., dated January 15, 1982, represented that counsel had contacted a number of the persons whose grand jury testimony PIA was seeking. These individuals objected to the disclosure of their grand jury testimony, according to Mr. Riddle, on the following grounds: (a) disclosure would violate the understanding of the witness that his testimony would be secret unless used in a criminal case; (b) disclosure could have an adverse impact on the relations of the witness with his co-workers; and (c) disclosure would unfairly and erroneously suggest to the public that the witness was guilty of personal wrongdoing or was a subject of the investigation.

4. While PIA has served the U.S. Department of Justice, Criminal Division, with a copy of its original motion, filed November 10, 1981, and it has not responded in any manner, the Magistrate observes that the grand jury functions as an arm of the court and that the grand jury's functions ought to be protected by the court even in the absence of any position by the Department of Justice, and even where the · Department of Justice may have no objection to the release of grand jury testimony. Indeed, in *Douglas Oil Co. v. Petrol Stops Northwest, supra.*, an attorney from the Antitrust Division of the Department of Justice appeared and indicated that the government had no objection to the requesting party receiving the transcripts

which had already been made available to the defendants under Rule 16(a)(1)(A), Federal Rules of Criminal Procedure; nonetheless, Justice Powell dealt with the issue of "particularized need" and reversed the Court of Appeals which had upheld the district court's order releasing the grand jury testimony transcripts involved in that case. Disclosure is appropriate only where the need for it outweighs the public interest in secrecy and the burden rests upon the private party seeking disclosure.

5. PIA has suggested that the disclosure of the grand jury testimony of a deceased witness may be of use in serving as a "check" on other still alive witnesses with respect to refreshing recollection or impeachment. But this is mere speculation at this time and more must be established to require the production of grand jury testimony of a deceased individual, *e.g.*, will the live witness need to be refreshed, will his testimony even suggest a basis for impeachment, are there other records and documents available to impeach so that the grand jury testimony would be merely cumulative? Absent a showing that an injustice would somehow result, the Magistrate concludes that *Baker v. United States Steel Corp.*, 492 F.2d 1074, 1079 (2d Cir. 1974), which counsels against disclosure of the grand jury testimony of deceased witnesses, should be followed.

some length, where there is some showing of a need to refresh recollection or a basis for impeaching a witness, a grand jury transcript may be produced to be used at the deposition of that witness or in cross-examination at the trial. Judge Clary in *Philadelphia v. Westinghouse Electric Corp., supra,* suggested that the grand jury testimony could be made available to the deposition Judge, for an *in camera* examination where warranted. Justice Powell quoted with approbation Judge Clary's suggested procedure for handling such matters, in relevant part, as follows:

> "[T]he Grand Jury transcript of any witness deposed ... should be made available to the deposition Judge.... There may be and probably will be many instances during these national depositions when disclosure may be advisable.... The refusal [to order disclosure in this case] cannot rule out production where in camera examination by a deposition Judge uncovers material discrepancy or significant facts which the witness concealed, or failed to remember, at his deposition. Such disclosure as is necessary to uncover full and complete facts must be allowed.... The deposition Judge may then contrast the Grand Jury testimony with the deposition and determine, in his own discretion, whether in the interest of justice, there is compelling need for disclosure." *Id.,* at 491. 441 U.S. at 227, 99 S.Ct. at 1677.[6]

 While the Magistrate is very conscious of the age of this case, the case having been filed September 25, 1979, and that a failure to order disclosure of the grand jury transcripts now may slow completion of pretrial discovery in this case, the Magistrate is of the view that we cannot sacrifice the legal principles requiring "particularized need" to protect the effectiveness of the grand jury process and privacy of individuals who appear before them to principles of efficiency in judicial administration, even though that is a goal all judges should strive to achieve. However, in balancing competing interests, the Magistrate concludes that, in the context of this case and the insufficient showing made by PIA of particularized need, the protection of the grand jury transcripts and the effectiveness of grand jury functions shall prevail, and accordingly, PIA's motion shall be denied, without prejudice to renew as to the grand jury transcript of any particular individual upon a showing which meets the "particularized need" standard.[7] In such a situation, plaintiff shall present its motion to the Magistrate for an *in camera* examination of the relevant grand jury testimony and for a prompt ruling so that final pretrial discovery may be expeditiously completed.[8] In the meantime, counsel for PIA shall commence promptly its deposition program of defendant's current or former officials or employees, to be completed no later than April 15, 1982, subject to any extensions which may be allowed either by the Court or Magistrate in resolving any future discovery disputes or in connection with disclosure of grand jury transcripts.

---

**6.** Of course, the function of the deposition Judge can now be performed by a United States Magistrate exercising that authority pursuant to 28 U.S.C. § 636(b).

**7.** See, *e.g., SEC v. National Student Marketing Corp.,* 430 F.Supp. 639 (D.D.C.1977) where the court noted that depositions which had been taken of several witnesses whose transcripts were sought, indicated they had been unable to recall significant events. And even in such circumstances the availability of other testimony or statements to refresh recollection or to impeach may be highly relevant. See, *e.g., In re Grand Jury Investigation,* 414 F.Supp. 74, 77 (S.D.N.Y.1976). See also *United States v. Moten,* 582 F.2d 654, 663 (2d Cir. 1978).

**8.** The Magistrate will require a showing of particularized need, such as that which was made in *In re Corrugated Container Antitrust Litigation,* 1981-2 Trade Cases (CCH), ¶ 64,287, at p. 74,299 (S.D.Tex.1981) (Widespread invocation of Fifth Amendment rights against self-incrimination and a witness's faulty recollection precluded meaningful discovery related to material aspects of the case).